## WATKINS et al. v. GILMORE, and vice versa.

1. Where a testator bequeaths to his wife for life a large body of land, and in his will says: "I give all my said property to my children who are then living and to the children of such of my children as are now dead or who may be dead at her death, the grandchildren to take the *parts* their parents would have taken if living at her death," and "The *parts* above given to my children they are to have for and during their lives and at their deaths to go to their children," and "If any of my children should die and leave no children, then I give the part given to him to be equally divided between my children and grandchildren who survive him or her, the grandchildren to take the part their parent would have taken if living," upon the death of the widow the land may be partitioned among the life-tenants for the purpose of allowing each to have, use, and enjoy his or her part during the term of such life-interest.

2. Upon such terms of a will, if all the parties entitled to enjoy the property at the death of the widow were of full age and sui juris, and applied to the ordinary for partition, and all the requirements of the statute in respect to partition were complied with, and if the partitioners made a division of the land, and the executors made deeds accordingly, and the applicants accepted such deeds, put them to record, and went into possession under them, such deed to each would put into the taker the right of possession during his life; and all the other parties, who thus took under deeds made in pursuance of such division in kind, could not recover from a purchaser of the part set apart to one of their number, by simply showing the death of the party who had sold and without showing that he left no children surviving him.

3. Whether or not it would be a fair construction of such a will that the testator intended that at the death of his wife the land should be divided between his children then in life, and the children of deceased children per stirpes, and that his grandchildren should succeed in fee to such part of the land as had been set apart to their several deceased parents—query.

4. Neither by pursuing the statutory method for partition, nor by agreement of life-tenants, can the testamentary scheme be set aside as to parties who may have an interest in the estate and who were not parties to the partition or agreement.

5. Where a child of the testator took, under such circumstances, his part, recorded his deed and went into possession, sold the same and died, the other parties to such partition, who had each accepted a similar deed and had gone into possession under it, and who made no protest or objection to each of the others doing likewise with his or her share, and who made no offer to restore to the estate or their colegatees what they severally had thus appropriated, could not recover it from the purchaser, at least without showing that the vendor died without children; and in the absence of such proof the court properly directed a verdict for the defendant.

Argued February 10,—Decided July 14, 1908.

Ejectment. Before Judge Reagan. Butts superior court. February 21, 1907.

Associate Justice Beck being disqualified, Judge Ellis, of the Atlanta circuit, was appointed to preside in his stead.

*Y. A. Wright* and *John R. L. Smith,* for plaintiffs.

*John I. & J. E. Hall* and *Frank Z. Curry,* for defendant.

ELLIS, J. This is a suit in ejectment, brought in the fictitious form wherein Doe, upon the several joint and separate demises of Joel B. Watkins, B. F. Watkins, E. P. Watkins, James B. Watkins, Mack Watkins Jr., Mrs. Amanda McDaniels, Mrs. Mollie Smith, Mrs. Ida Hale, Mrs. Martha T. Bledsoe, Mrs. Roxie Millen, and George Thornton, against Roe as casual ejector and H. F. Gilmore as tenant in possession. A joint demise of the whole interest in the premises in dispute was laid by the petition in all of the persons named above as lessors; a joint demise of an undivided ten-elevenths interest in the same was laid by the petition in all of said persons except Mack Watkins Jr. A separate demise to an undivided one-tenth interest in the same was laid in each of said persons except Mrs. Roxie Millen and George Thornton, and separate demises of an undivided one-twentieth interest therein were laid in the two last named persons. After defendant Gilmore had introduced a deed from Mack Watkins Jr., conveying to him the premises in dispute, the plaintiffs filed an amendment, which was allowed by the court, striking the name of Mack Watkins Jr., in all demises laid in the petition, and striking all demises laid therein in the name of said Mack Watkins Jr. Thereupon the defendant Gilmore moved the court to strike the joint demise in the name of all of said persons as first laid in said petition, and first hereinabove mentioned, upon the ground that plaintiffs could not proceed with recovery under said joint demise after one of the joint

lessors therein named had been stricken therefrom. The court sustained said motion and ruled that said joint demise must be stricken from the petition, to which ruling the plaintiffs excepted, and they now assign the same as error.

Upon the trial, the following facts were proved without contradiction: (1) A. M. Watkins had title to,. and was in possession of, a tract of land of which the premises in dispute were a part at the time of his death. (2) Defendant Gilmore held under a chain of conveyances, properly executed and duly recorded, of the premises in dispute, from G. W. Watkins down to himself, including in said chain a quitclaim deed from Mack Watkins Jr., as follows: Watkins and Hale, executors of A. M. Watkins, to G. W. Watkins; G. W. Watkins, by his trustee in bankruptcy, to Mack Watkins Jr.; Mack Watkins Jr. to defendant Gilmore. (3) All of plaintiff's lessors are children of said A. M. Watkins, except Mrs. Roxie Millen and George Thornton, who are grandchildren, being the children of a child of said A. M. Watkins, who was dead at the date of the death of said A. M. Watkins. Mary A. Watkins, the widow of the said A. M. Watkins, died before the division of the land hereinafter set forth. Said G. W. Watkins scheduled the premises in dispute as his property when he was adjudged bankrupt, and it was sold by his trustee to Mack Watkins Jr. (4) At the time of his death A. M. Watkins left no children surviving him, except those mentioned as lessors, except G. W. Watkins and Sallie A. Scott; and except Mrs. Millen and George Thornton there were no grandchildren of A. M. Watkins whose parents were dead at the time of the death of said A. M. Watkins, and since his death none of his children had died except G. W. Watkins, through whom the premises in dispute came, and Mrs. Sallie A. Scott. Mrs. Mary A. Watkins, widow of A. M. Watkins, died before the death of G. W. Watkins, or Mrs. Scott. (5) There is no evidence in the record as to whether Mrs. Sallie A. Scott or G. W. Watkins left any child or children. It was admitted by counsel of all parties that all parties claim title under A. M. Watkins. A certified copy of the will of A. M. Watkins was introduced in evidence by plaintiffs, and the material parts of it were conceded to be as follows: Item one. "I give all the property that I may own at my death, both real and personal, to my wife, Mary A. Watkins, for and during her life or widowhood. At her death or marriage I give all my said

property to my children who are then living and to the children of such of my children who are now dead or may be dead at her death, the grandchildren to take the parts their parents would have taken at her death." Item two. "The parts above given to / my children they are to have for and during their lives and at their deaths to go to their children." Item four. "If any of my children should die and leave no children, then I give the part given to him to be equally divided between my children and grandchildren who survive him or her, the grandchildren to take the part their parent would have taken if living." Item five. "I appoint my son, Joel Watkins, and my son-in-law, Samuel Hale, executors of this will."

Defendant introduced certified copies of some proceedings in the court of ordinary of Butts county. (1) A petition to the ordinary, signed by the two executors, in which it was recited (a) that all the debts of the deceased had been paid or were in process of payment; (b) that the estate was ready for distribution, that the residue of the estate can be readily divided in kind, and that there is no need for a sale of the residue; (c) that it is practicable to make distribution in kind of the residue of the estate which consists of 450 acres (more or less) of land in the 612th militia district of Butts county; (d) that the parties at interest in this State are Joel B. Watkins, Sarah Scott, Amanda McDaniel, B. F. Watkins, Mary A. Smith, A. M. Watkins, E. P. Watkins, G. W. Watkins, Ida Z. Hale, James B. Watkins, Roxie Millen, and George Thornton, and residing out of this State Mrs. Martha T. Bledsoe. This petition prayed for an order of distribution of the estate in kind, pursuant to the statute for such cases made and provided. Notice in writing was given of the filing of this application for an order of distribution in kind, and that the same would be heard at the regular December term, 1899, of said court of ordinary. This notice was dated October 30th, 1899, and was signed by Joel Watkins and S. J. Hale as executors. Acknowledgment in writing, of service, and waiver of copy and of all further service by an officer, was made by all plaintiffs' lessors and by G. W. Watkins and Sallie A. Scott. At the December term, 1899, said court of ordinary passed the following order: "Upon hearing the application of Joel B. Watkins and S. J. Hale, executors of A. M. Watkins, at this term for the appointment of persons to distribute the estate of said

A. M. Watkins, in their hands, amongst the lawful distributees of said estate, and being satisfied that due notice as required by law has been given to the parties at interest of their said application, and the court being satisfied such distribution is practicable, it is therefore ordered by the court that E. P. Newton, J. R. Watkins, Abel Lemons, and Cornelius McClure, all freeholders of said county, make a distribution of said estate according to law."

After the passing of the foregoing order, the ordinary issued a commission to the four commissioners appointed, in which he recited the final order and by virtue of it directed them, or a majority of them, after taking a proper oath, "to proceed to make such a just and equal partition and division of the land described among the legal heirs [naming them] as you shall judge to be in proportion to their share or interest of each, . . they the said heirs at law having each an equal interest in said land, except that Roxie Millen and Geo. M. Thornton take one distributive share." This order was dated December 5, 1899. E. P. Newton, J. R. Watkins, and Cornelius McClure took the prescribed oath, qualified, and proceeded to execute the order. The commissioners filed a report in due form, setting forth that by virtue of the order of the court of ordinary they had made a fair division of the estate of A. M. Watkins, then in the hands of the executors, among his lawful distributees, that they had arranged the property as nearly as possible in twelve equal lots numbered from 1 to 12 inclusive, each adjudged to be of the value of $1,320. The report, or distribution, showed that the lots were drawn for by chance, and a description of the several allotments is given. A surveyor's plat was attached, showing the several parcels allotted. On the coming in of this report, the court of ordinary at the January term, 1900, made the return the judgment of the court, and in the judgment it was said: "Let deeds be executed by said executors to each of the several parties, for the land assigned to them respectively."

Defendant also introduced a deed from the executors of A. M. Watkins to G. W. Watkins, in which they conveyed to him that part of the land set apart to him. The deed recited that it was made "by virtue of a division made by commissioners which division is a judgment of the court of ordinary of said county, rendered at the regular term January, 1900," and the consideration is stated, "for and in consideration of a division in kind of

51

the real estate of said deceased," and the deed proceeds to say that said executors, "grant, bargain, sell, and convey (so far as the office of executors authorizes us) unto G. W. Watkins" (here follows a description of the property in dispute) "to have and to hold the same, together with all the rights, members, and appurtenances thereunto belonging, unto the said G. W. Watkins, his heirs and assigns, forever, in as full and ample a manner as the same was seized, possessed, and enjoyed by said A. M. Watkins at the time of his death." It was admitted by plaintiffs that deeds identical in form and substance were made and delivered by the executors to each of the parties named in the writ of partition, conveying to each the share allotted to him or her; and that each immediately went into possession.

An attempt was made to show that this division in kind was intended, by the parties thereto, to be a family settlement of the estate, and to show that all agreed to it and in fact divided the land in fee. The evidence on this question, as set out in the record, does not appear to have established this contention; and one of the errors complained of is that the trial court ruled that the case was controlled by the documentary evidence and that it was one for the direction of a verdict.

Another error assigned is that the court overruled an objection to the admission of this documentary evidence; the objection was urged on the ground that the proceedings in the court of ordinary could not in any manner affect the title to land; and that if the statutes authorizing division of estates in kind could be held to affect the title, then such statutes, in so far as they purport to vest the ordinary with such jurisdiction, are void, because such jurisdiction is by the constitution exclusively vested in the superior courts. It was also urged that in so far as said statute purported to vest courts of ordinary with such jurisdiction, said statute was void as contrary to that provision of the constitution fixing the venue of cases respecting titles to land in the county where the land lies, in such cases fixing the jurisdiction in the superior court of the county where the land lies. The court overruled said objections and admitted the evidence.

The court of ordinary had jurisdiction over the proceedings filed to partition the land among the life-tenants. A large body of land capable of division in kind left by a testator by will to his wife

for life and at her death to his children for their lives, with remainder in fee to his grandchildren, may be partitioned at the death of the widow among the children. There is no good reason in law why the life-tenants should hold the land as tenants in common, if it is to their advantage to have it divided between them, and if such division can work no injury to those entitled in remainder. Such division is within the contemplation of the statute providing for partition, and in our view of the case such statute is not unconstitutional.

The evident purpose of the proceedings before the court of ordinary was to divide the land in question among the children and the children of a deceased child or children, in such manner as to allow them the separate use of the allotted shares during the time they were allowed to enjoy it under the terms of the will. The will of A. M. Watkins, after providing that his wife should have all his real and personal property, which he owned at the time of his death, for and during her life or widowhood, uses the following language: "At her death or marriage I give all my said property to my children who are then living and to the children of such of my children as are now dead or who may be dead at her death, the grandchildren to take the parts their parents would have taken if living at her death." Here it will be observed that the grandchildren are to take the "parts" their parents would have taken if living, etc. If the will had stopped with this provision, it is perfectly clear that the widow would have taken an estate for life or widowhood, and that upon her death or marriage the children and children of deceased children would have taken the estate in fee. In that event there is no question that partition of the property in kind could have been made in the usual way. But the will goes further and provides: "The parts above given to my children they are to have for and during their lives and at their deaths to go to their children." Here again the testator uses the word "parts" and not interest or even share in the estate. And again, "If any of my children should die and leave no children, then I give the *part* given to him to be equally divided between my children and grandchildren who survive him, or her, the grandchildren to take the *part* their parent would have taken if living."

What does all this mean? Does it mean that each of the twelve children or the representatives of the children should become tenants in common, and have an undivided and indivisible one-twelfth part of the estate, and that a tract of farm land capable of separation should never be divided during the succeeding generation, and that their children should be born into a final right to possess an undivided interest in the whole? Or does it mean that the land might be fairly divided into separate and equal parcels, and that the children of each child should finally come into the inheritance in fee of that part which fell to or was assigned to their parent, whether by voluntary agreement or legal proceedings under the statute authorizing partition, and that upon the death of any child of the testator without children, his or her share should revert to his fellow life-tenants, and through them descend in fee to the grandchildren? To take the construction that the estate could not be divided in kind would create the probable contingency that this estate would soon come into the position that it would be held under a situation that some of the parties entitled to possess it would be remaindermen, and some of them owners in fee. In fact there could come about a situation where for years, possibly until the death of the last survivor of the twelve, there would never be any certain ownership of any particular part of the property, and the hardship would arise of never being able to sell or safely improve any part of it. Following the rule of the intention of the testator as a primal point in the construction of a will, would it not appear that A. M. Watkins more probably intended to leave his undivided estate to his wife and at her death to go to his children and their representatives per stirpes in equal shares, and then to entail upon the children of his children the remainder in fee of that part which came through their several parents?

But aside from such a construction of the will, let us see where the real plaintiffs in this case stand. So far as the record discloses, all the parties at interest in the life-estate after the death of the widow were sui juris. They in the usual way, and following the statute in such cases made and provided, instituted in the court of ordinary proceedings for partition of the land in kind. These proceedings went forward in the regular way and resulted in an award, or division, which set apart to each petitioner his or her share. The executors made deeds accordingly and conveyed

each separate part to him or her who was entitled to receive it. The deeds purported to convey to each distributee. all the right, title, and interest A. M. Watkins had at the time of his death; but there is a recital that they grant and convey so far as the office of executors authorizes them so to do. In our opinion the executors under these partition proceedings could not by any recitals convey a greater interest. than the parties thereto had in the estate, and as against the right of any person not 'a party to the partition there could not have been conveyed by them more than a life-estate; but can even this question be made by persons who while being sui juris brought about the partition, acquiesced in it, went into possession under it, recorded their deeds made by virtue of it, and permitted others to act and acquire rights by reason of it and their own conduct in respect to it? Civil Code, §§ 5151, 5152; *Brice* v. *Sheffield,* 121 *Ga.* 216 (48 S. E. 925).

Let us enquire as to the effect of these proceedings in partition on the parties to them. Each one of the parties applied for partition, each one of them took his or her share, each one went into possession of his or her share, and each one allowed every other one to go into possession without protest or objection. Can parties so act and not be estopped? G. W. Watkins took his deed, went into possession, put his deed on record, and upon being adjudged bankrupt scheduled the land set apart to him as part of his estate. So far as the record discloses, none of the plaintiffs took any action in respect to the sale by the trustee in bankruptcy. None of them objected, and one of them became the purchaser at the trustee's sale. Can the other parties retain their shares, not offer to undo the division and place the property where it stood before, complain now and take away from Gilmore the land he purchased, under all the circumstances, from Mack Watkins, one of the petitioners for partition? We think not.

But aside from all this, can the plaintiffs recover this land until they show that G. W. Watkins died leaving no children? He was entitled to hold the land at least for life; and if he died leaving child or children, they were entitled to succeed to whatever estate he had and to own it in fee, and, outside of any question of equitable estoppel, his brothers and sisters, who took part in the division and consented to have this land set apart to him, could only be entitled to recover it from an apparent owner by showing

that he left no children, and that by reason of that fact the land reverted to them in certain proportions, or back into the corpus of the estate. The record is silent as to whether or not G. W. Watkins left children, and there is no presumption either way, and in the absence of such proof there could have been no recovery by the plaintiffs, or either of them, whether they sued separately or jointly; and the direction of a verdict by the court was therefore proper.

We think that the refusal of the court to admit parol evidence as set out in the record, even if error, was cured by the subsequent ruling admitting it, but the evidence when admitted was not sufficient to establish any further concert of action among the plaintiffs than is exhibited by the partition proceedings, and their joint and several acts and doings under and by virtue of it. If the action of the plaintiffs, they being of full age and in every way competent to contract, estopped them to deny the right of Mack Watkins Jr. to the land set apart to him, or if such conduct could be shown as matter of defense, then the evidence sought to be introduced, and subsequently admitted, was competent to illustrate the question of equitable estoppel.

In the case of *Watkins* v. *Gilmore,* reported in 121 *Ga.* 488 (49 S. E. 598), this court had under consideration this will of A. M. Watkins, and Chief Justice Simmons, in delivering the opinion of the court, said: "After the death of the widow, the first life-tenant, and the assent of the executors to the devise to the second life-tenant, G. W. Watkins, the latter's title to the life-estate became perfect. This assent of the executors not only served to perfect the life-tenant's inchoate title to the life-estate, but inured to the benefit of the remaindermen provided for in the will. The life-tenant having left no children, the remainder went to his brothers and sisters who were in life and to the children of his deceased brothers and sisters." In the case then before the court there was, unlike this case, proof that G. W. Watkins died leaving no children, and the case turned upon the right of the executors to recover the land as part of the estate of A. M. Watkins. The court held, that having assented to the division in kind, and having in furtherance of such assent made a deed to G. W. Watkins, the estate conveyed to him passed out of the executors or their control, and ceased to be a part of the estate of A. M. Watkins, and they

could not recover it. The ruling in the case named was that upon the death of G. W. Watkins his part of the estate passed to his brothers and sisters, and to their children. That view of the case is concurred in now, except that we have here for consideration the division in kind with all attendant circumstances which intervene between the brothers and sisters and the two grandchildren, all of full age, who participated in the division, and this defendant. That case was determined solely on the ground that the executors, having parted with their control of this property, could not maintain suit to recover it.

We have seen that no act of the executors nor of the parties to the partition could affect the rights of remaindermen not parties thereto; and in the event that any such parties, as for instance, grandchildren of A. M. Watkins, other than the two named as plaintiffs herein, should survive their parents and become entitled to sue for their remainder interest in this part of the property, or any other part named in the partition, there would be a different case for determination from the one at bar, which we are now called upon to decide.

The exception to the judgment of the court, in ruling that the joint demise originally in all the plaintiffs in error and Mack Watkins Jr. should be stricken after by amendment of plaintiffs the name of said Mack Watkins Jr. had been stricken therefrom, is immaterial, because, in the view we have taken of the case, the direction of a verdict was proper whether the cause proceeded on the joint or separate demises of any or all the plaintiffs.

*Judgment affirmed on each bill of exceptions. The other Justices, except Beck, J., concur.*